Present: Carrico, C.J., Compton,[*] Lacy, Hassell, Keenan, Koontz, and Kinser, JJ.

BLUE STONE LAND COMPANY, INC.

OPINION BY
v.  Record No. 990969    CHIEF JUSTICE HARRY L. CARRICO
                                     March 3, 2000
BILL V. NEFF, T/A BILL V.
NEFF ENTERPRISES

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
John J. McGrath, Jr., Judge

In a motion for judgment filed below, Bill V. Neff, trading as Bill V. Neff Enterprises (Neff), sought damages from Blue Stone Land Company, Inc. (Blue Stone) for the latter's alleged breach of a written contract dated July 22, 1992. In the contract, Neff agreed to construct a street known as Lucy Drive in a subdivision located in the City of Harrisonburg and Blue Stone agreed to pay Neff an amount not to exceed $181,609.88 for the work. Neff alleged that he had fully performed the contract but that Blue Stone had refused to pay the agreed amount.

Blue Stone filed grounds of defense in which it denied any indebtedness to Neff. Blue Stone also filed a counterclaim in which it alleged that Neff had agreed to complete the construction of the street within a reasonable period of time, but, despite repeated requests from Blue

---

[*] Justice Compton participated in the hearing and decision of this case prior to the effective date of his retirement on February 2, 2000.

Stone, the construction was not completed within a reasonable period of time. Blue Stone alleged further that as a direct and proximate result of Neff's material breach of contract and refusal to construct the street within a reasonable and timely manner, Blue Stone was unable to sell its lots. Finally, Blue Stone alleged that as a direct and proximate result of Neff's material breach of contract and refusal to construct the street in a reasonable and timely manner, Blue Stone had suffered damages in the amount of $200,000.

The record shows that Neff and Blue Stone each contributed half the land for construction of Lucy Drive. In the contract between the parties, Blue Stone agreed to pay Neff $32,089.88 for previous work performed on the street and to split "fifty/fifty" with Neff the remaining cost of construction. The contract provided that Blue Stone's share of the total cost would not exceed $181,609.88, and payment would not be required until lots located on Lucy Drive "would be sold by Bluestone." However, it was agreed that the $181,609.88 amount "would be paid in full no later than five years from June 9, 1992." No time was fixed for the completion of Lucy Drive.

On September 27, 1996, Blue Stone addressed a letter to Neff stating that since "prior to July of 1992 . . .

2

[n]othing further has been done on [Lucy Drive]" and that Neff should "do no further work" on the street. A Neff exhibit in the record indicates that construction of the street was "generally completed" as of July 14, 1997, some five years after the date of the parties' contract.

During discovery, Neff served interrogatories upon Blue Stone. One inquiry required Blue Stone to "[i]temize and describe with particularity all damages, including but not limited to the $200,000 in damages sought in [the] Counterclaim filed in this case . . . ." In response, Blue Stone stated:

> i) The sale of [Blue Stone's] land abutting Lucy Drive to Balanced Care Corporation was contingent upon [Blue Stone] constructing and paying for Deyerle [Avenue] Extended. Due to the fact that Lucy Drive was not completed as agreed, [Blue Stone] could not sell its lots to Balanced Care Corporation without constructing a street at an estimated cost of $200,000.

Lucy Drive runs in a north-south direction, with Neff's land lying to the west and Blue Stone's to the east. Deyerle Avenue runs east and west along Neff's southern border and intersects Lucy Drive at a right angle. Deyerle Avenue extended runs eastward from Lucy Drive and is bordered on both sides by Blue Stone's property. The lot sold by Blue Stone to Balanced Care Corporation is located at the southeast corner of the intersection of Lucy Drive

3

and Deyerle Avenue extended.  A Blue Stone exhibit in the record indicates that the cost of constructing Deyerle Avenue extended amounted to $296,289.86.

Prior to trial, Neff filed a motion in limine seeking to exclude from evidence any testimony or exhibits relating to costs expended by Blue Stone in the construction of Deyerle Avenue extended.  By order, the trial court sustained Neff's motion in limine and ruled that Blue Stone "will be limited to proving damages relating to lost lot sales or diminished revenues from lot sales."

On the morning of trial, Blue Stone moved for reconsideration of the trial court's ruling on the motion in limine.  When the court denied the motion for reconsideration, Blue Stone moved the court to provide the reasons for its ruling.  The trial judge stated:  "I consider damages for construction of an alternate route to [Blue Stone's] property to be special damages which should have been pled specially.  It would have been very simple to plead it []specially, it was not done, and it's too late to change it now on the eve of trial."

The case proceeded to trial before a jury.  At the conclusion of all the evidence, the trial court struck Blue Stone's counterclaim and submitted the case to the jury on Neff's motion for judgment alone.  The jury returned a

4

verdict in favor of Neff in the amount of $181,609.88. The trial court entered judgment on the verdict, and we awarded Blue Stone this appeal.

Blue Stone assigns a number of errors, but we think the dispositive question is whether the trial court erred in sustaining Neff's motion in limine on the ground the damages for the construction of Deyerle Avenue extended were special damages not specially pleaded. We are of opinion the trial court did err in this regard.

In Roanoke Hospital Ass'n v. Doyle & Russell, Inc., 215 Va. 796, 214 S.E.2d 155 (1975), we said:

> There are two broad categories of damages ex contractu: direct (or general) damages and consequential (or special) damages. Direct damages are those which arise "naturally" or "ordinarily" from a breach of contract; they are damages which, in the ordinary course of human experience, can be expected to result from a breach. Consequential damages are those which arise from the intervention of "special circumstances" not ordinarily predictable. If damages are determined to be direct, they are compensable. If damages are determined to be consequential, they are compensable only if it is determined that the special circumstances were within the "contemplation" of both contracting parties. Whether damages are direct or consequential is a question of law. Whether special circumstances were within the contemplation of the parties is a question of fact.

Id. at 801, 214 S.E.2d at 160 (citations and footnote omitted); see also Chesapeake & Potomac Tel. Co. v. Sisson & Ryan, Inc., 234 Va. 492, 505-06, 362 S.E.2d 723, 731 (1987) (damages direct when contractor fails to complete

5

work to specifications and building collapses). Direct or general damages need not be specially pleaded. <u>Wood v. American Nat'l Bank</u>, 100 Va. 306, 309, 40 S.E. 931, 932 (1902).

Here, the counterclaim involves a garden-variety type of breach of contract without the intervention of any special circumstances that would convert the resulting damages from general to special. Neff and Blue Stone were both land developers, and Neff knew that Blue Stone's purpose in contracting for the construction of Lucy Drive was to provide access to Blue Stone's land so it could be developed and sold. Blue Stone alleges that Neff failed to complete Lucy Drive within a reasonable period of time. If Neff breached the contract in that respect, he should have expected that Blue Stone, in the ordinary course of human experience, would take alternative means of providing access to its property when needed to accomplish a sale of a portion that would have been served by Lucy Drive. Indeed, had Blue Stone not taken alternative means of providing access to its property, it might well have been met at the threshold of this case with a claim that it had failed to mitigate its damages.

The alleged damages, therefore, are those which arise naturally and ordinarily from a breach of contract, they

6

are direct and not consequential, and it was not necessary to plead them specially.  They were sufficiently pleaded in the allegation of Blue Stone's counterclaim that "[a]s a direct and proximate result of [Neff's] material breach of contract and refusal to construct Lucy Drive in a reasonable and timely manner, [Blue Stone] suffered damages in the amount of TWO HUNDRED THOUSAND DOLLARS."  If Neff desired more detailed information concerning the damages, he could have requested a bill of particulars.

Neff argues, however, that even if it is assumed the trial court erred in any of its rulings concerning Blue Stone's alleged damages for the costs of constructing Deyerle Avenue extended, such error "would not provide grounds for overturning the jury's verdict."  Neff says that by favoring him with a verdict in the full amount of his claim, "the jury conclusively determined and established the fact that [he] was not in breach . . . and . . . had in fact completed Lucy Drive within a reasonable amount of time."  Hence, Neff concludes, "[s]ince the jury found that [he] was not in breach of the contract, and since Blue Stone's defenses and counterclaim damages (including the proffered Deyerle Avenue extended construction costs) were asserted solely on the basis of a breach by Neff, . . . said damages became irrelevant to the

case once the jury's verdict was returned in favor of Neff"

and the trial court's rulings were "rendered . . .

harmless."

We disagree with Neff that the error in excluding

evidence of the cost of constructing Deyerle Avenue

extended was harmless.  In a related context, we said:

> Under the harmless error doctrine, the judgment of the
> court below will be affirmed whenever we can say that
> the error complained of could not have affected the
> result.  The doctrine is never applied, however, when
> it appears that the jury has been misinstructed and,
> had it been properly instructed, that it might have
> returned a different verdict.

Rhoades v. Painter, 234 Va. 20, 24, 360 S.E.2d 174, 176

(1987) (citation omitted); see also Director Gen'l of

Railroads v. Pence's Adm'x, 135 Va. 329, 352, 116 S.E. 351,

358-59 (1923) (error in instructing jury not harmless when

upon correct instruction jury might have found contrary

verdict).  By logical extension, the same rule must apply

when it appears that evidence has been excluded erroneously

and that, had it been admitted, it might have produced a

different result.  See Pace v. Richmond, 231 Va. 216, 226,

343 S.E.2d 59, 65 (1986) (error in excluding evidence

harmless when it could not affect verdict); Lester's Ex'r

v. Simpkins, 117 Va. 55, 69, 83 S.E. 1062, 1067 (1915)

(admission of illegal evidence not reversible when it could

not affect result).

In this case, we are of opinion that had the evidence concerning the cost of constructing Deyerle Avenue extended been admitted it might have produced a different result both with respect to Blue Stone's defenses and its counterclaim. Daniel W. Brubaker, one of Blue Stone's principals, testified to the necessity for the construction of Deyerle Avenue extended. Neff objected to the testimony as violative of the trial court's order granting Neff's motion in limine, but the court overruled the objection, and the ruling is not the subject of an assignment of cross-error.

Brubaker was asked why Blue Stone had written the letter of September 27, 1996, to Neff "telling him not to go ahead with the street." Brubaker answered as follows:

> Well, at that point, the street had not been built. We had waited all of this time for it to be built, and I had a contract at that time with [Balanced Care Corporation] to . . . buy three acres of real estate from us at a price of $100,000 per acre. They would not sign the contract to purchase, or would not buy it until I assured to them . . . that we would have an entrance, either off of Lucy or off of Deyerle. And since Lucy was not built, I immediately told them that I'd bring them in an entrance off of Deyerle Avenue extended, which we did. And we had to build Deyerle Avenue extended in order to sell that three-acre lot to [Balanced Care Corporation].

It seems somewhat inconsistent for the trial court to admit evidence concerning the necessity for constructing Deyerle Avenue extended but to exclude evidence concerning

9

the cost of construction. Without evidence concerning the cost of construction, the testimony concerning necessity would have been meaningless or at least confusing to the jurors. They would not have known how to treat the testimony and, out of perplexity, might have disregarded it entirely. Had the evidence been admitted, however, the confusion might have been avoided and a different result obtained.

Furthermore, the trial court's sole basis for striking Blue Stone's counterclaim was "a lack of any compensable damages." Had the evidence of the cost of constructing Deyerle Avenue extended been admitted, the trial court might have found the evidence of compensable damages sufficient and might not have struck the counterclaim. And it goes without saying that Blue Stone would have been in a much stronger position, both offensively and defensively, had the counterclaim been submitted to the jury for its consideration.

Moreover, under the instructions of the trial court, Blue Stone had the burden of proving that Neff's alleged breach of contract was material. With evidence concerning the cost of construction excluded from the case, Blue Stone was denied one appropriate basis for the jury to find that Neff's alleged breach was material and not merely <u>de</u>

10

minimus.  Had the evidence been admitted, the jury might well have found Neff's breach was material and decided against him.

For these reasons, we will reverse the judgment of the trial court and remand the case for a new trial on Neff's claim and Bluestone's counterclaim consistent with the views expressed in this opinion.

<u>Reversed and remanded</u>.