## CIRCUIT COURT OF FAIRFAX COUNTY

Westerra Reston, L.L.C.,
d/b/a Terrabrook

v.

Christopher W. Walker et al.

June 2, 2000

Case No. (Chancery) 164601

BY JUDGE HENRY E. HUDSON

This case is hopefully the final chapter of a protracted easement dispute involving a 7.7 acre parcel of undeveloped commercial property known as Parkridge VI. The parcel is part of Parkridge Center, located in Reston, in the heart of the Dulles Corridor. The specific easement in question is access to a ring road originally constructed by Defendant Walker, who owns or controls all but one of the other properties in the Parkridge Center development. A portion of the ring road is constructed on Parkridge VI.

All but two counts of the Amended Motion for Judgment were disposed of in an earlier proceeding. The balance of the case was transferred to the equity side of the Court. The remaining counts, III and V, were tried by the Court sitting without a jury on April 11-13, 2000. Count III alleged a breach by the Defendants of a master easement agreement executed in December 1982. Count V pleaded the alternative theory of breach of common law easement by necessity.

After hearing the evidence, reviewing the pertinent paragraphs of the master easement agreement (Plaintiff's exhibit 1), and having the benefit of

argument of counsel, the Court found that the master easement agreement created a common easement for all properties comprising the Parkridge Center development. Specifically, the agreement provided the Plaintiff, as owner of Parkridge VI, with an easement to Sunrise Valley Drive over the ring road.

The Court further found that Defendant Walker and his associated partnerships had breached the master easement agreement as alleged in Count III of the second Amended Motion for Judgment. Having found that an express easement existed in Plaintiff's favor, the Court dismissed Count V as moot, without objection by the Plaintiff. Because no reported Virginia case provided specific guidance on the quantification of damages in a situation where a defendant intentionally deprives easement rights from a potential competitor in order to gain a tactical commercial advantage, the Court invited counsel to submit memoranda of law on this issue.

This is not the typical easement dispute driven by good faith differences of opinion. This is a case of tactical landlocking designed to force the plaintiff to sell Parkridge VI to Defendant Walker. A lawyer and sophisticated businessman, Walker himself described his litigation strategy as "leverage." As a result of the Defendant's ploy, the Plaintiff was unable to develop or sell Parkridge VI during a peak real estate market. Over a two-year period, the Plaintiff incurred substantial damages fending off the Defendant's subversive actions.

It is settled law in the Commonwealth that once a court of equity determines that an injury warranting redress has occurred, it will "do complete justice between the parties, enforcing, if necessary, legal rights and applying legal remedies to accomplish that end." *Waskey v. Lewis*, 224 Va. 206, 213, 294 S.E.2d 879 (1982). The Virginia Supreme Court apparently confirmed an aggrieved party's entitlement to quantifiable compensatory damages for deprivation of easement rights in *Dillingham v. Hall*, 235 Va. 1, 3-4, 365 S.E.2d 738 (1988). In fact, paragraph 8(a) of the 1982 master easement agreement provides for money damages as well as injunctive relief.

Although the Plaintiff is clearly entitled to injunctive relief in this case, only compensatory damages will provide complete justice between the parties. As the term implies, the function of compensatory damages is to compensate the prevailing party for the resulting pecuniary loss or injury sustained. *Zedd v. Jenkins*, 194 Va. 704, 707, 74 S.E.2d 791 (1953). Compensatory damages have traditionally been measured by the plaintiff's actual loss occasioned by a violation of his rights. *Orebaugh v. Antonious*, 190 Va. 829, 834, 58 S.E.2d 873 (1950). There is no precise formula for fixing compensatory damages. Each case is fact dependent and injects different factors into the equation.

In the context of a contract dispute, "[t]he object of the law in awarding damages is to make amends, or reparations, by putting the party injured in the same position, as far as money can do it, as he would have been if the contract had been performed." *Lehigh Portland Cement Co. v. Virginia Steamship Co.,* 132 Va. 257, 270, 111 S.E. 104 (1922). The law recognizes two species of damages in contract cases, direct or general damages and consequential or special damages. Direct damages are those which in the ordinary course of human experience can be expected to result from a breach. Consequential damages on the other hand arise from the intervention of special circumstances not ordinarily predictable, but are found to be within the contemplation of both contracting parties. *Blue Stone Land Co. v. Neff,* 259 Va. 273, 277-78, 526 S.E.2d 517 (2000).

In the immediate case, which is closely analogous to a breach of contract, Plaintiff seeks to recover for the lost investment value of the proceeds it would have received from the sale of the Parkridge VI parcel. In addition, Plaintiff requests reimbursement for interest on the loan and insurance on the property during the period access was denied. Plaintiff had a ready and willing buyer under contract for the property, JBG. Settlement was originally scheduled for July 1998 but was deferred numerous times over a two-year period awaiting resolution of the present easement issue. The Defendant was aware that the property was under contract of sale and intentionally erected a legal and physical blockade calculated to derail the transaction. The 1982 Easement Agreement, to which defendant Walker was a signatory in his capacity as an officer of a corporation he controlled, and the Plaintiff a third party beneficiary, clearly contemplated that the entire Parkridge Center tract would be developed as an office park.

Since the Defendant was on notice of the "special circumstances" underlying Plaintiff's theory of damages, the theory is viable under either a direct or special damage approach. See *Blue Stone Land Company v. Neff, id.* at 278. Assuming that Plaintiff is entitled to the damages claimed, the quantum of damages must be proven with reasonable certainty. Although mathematical precision is not required, "there must be at least sufficient evidence to permit an intelligent and probable estimate of the amount of damage." *Dillingham v. Hall, supra.*

The first element of damages sought by Plaintiff is the reasonable return on its investment of the cash proceeds from the sale of Parkridge VI from the initial date of settlement specified in the contract of sale. This represents investment income for a period of approximately two years. The prospective purchaser agreed to pay $5,090,000 under the contract. The purchaser's solvency and willingness to proceed to settlement is beyond question. Except

for the legal barrier erected by the Defendants, the Plaintiff would have had the benefit of $5,090,000 to invest or use as venture capital for a period of two years. The Supreme Court of Virginia has recognized lost investment return on capital as an appropriate measure of damages in certain instances. *Roanoke Hosp. Assn. v. Doyle and Russell, Inc.*, 215 Va. 796, 802, 214 S.E.2d 155 (1975). This is such a case.

The Defendants concede that the appropriate measure of damages in this case is compensation for the loss of use of the property. However, the Defendants argue that reimbursement for lost profits from the investment of sales proceeds is a remedy reserved for breach of contract cases. The Defendants further contend that Parkridge VI actually increased in value during the two-year period it was rendered dormant by the Defendants' refusal to grant access, a point inconclusively disputed by the experts. Because of this arguable accretion in value, the Defendants maintain that the Plaintiff suffered no actual damage. This position may have merit if the Plaintiff's intent was to retain the property in its portfolio for investment purposes. However, the uncontroverted evidence disclosed that the Plaintiff intended to sell Parkridge VI and either invest the proceeds or employ it as capital for other projects. Defendant Walker's actions deprived the Plaintiff of this firmly established business opportunity.

Plaintiff is clearly entitled to damages for the loss of the contemplated use of the property. It is important to keep in mind that the Defendants devised the easement issue for the specific purpose of preventing the sale or development of the property by a competitor.

The Court is of the opinion that only reimbursement for lost investment profits on the sales proceeds will adequately compensate Plaintiff for the deprivation of the use of Parkridge VI. Paragraph 8(a) of the 1982 Easement Agreement clearly provides for monetary damages in the event of a breach. In that sense, this matter is closely akin to a breach of contract case. The Court rejects the Defendants' argument that the lost use of sales proceeds is a fatally speculative theory of damages. The evidence established with reasonable certainty the amount of venture investment capital that would have been available, as well as the duration of the deprivation.

Based on credible testimony describing its investment practices, Plaintiff urges the Court to adopt 10% interest as a reasonable rate of return on the corporation's investment of the $5,090,000 in sale proceeds. The Court believes that 9% interest, as provided by § 6.01-330.54, Code of Virginia, 1950, as amended, is a more certain and defensible sum.

Accordingly, with respect to the loss of investment return on the $5,090,000 sale proceeds, the Court will award $458,100 in damages for the

first year and $457,718 for eleven months of the second year, with annual compounding. The original settlement date in the contract of sale was July 1998. The total damages in this category are $915,818.

Plaintiff's second element of damages is the cost of carrying the property for the two-year period in question. This category of damages arguably includes interest on a portion of the loan used to purchase a number of properties, of which Parkridge VI was a part, and the real estate taxes paid on the parcel over the relevant two-year period. The Defendants argue that these additional damages would effectively represent a dual recovery. However, but for the Defendants' breach of the easement agreement, the property would have been sold pursuant to the pending contract and the Plaintiff would not have incurred these clearly defined costs. In the Court's view, these were ordinary business expenses, which in the course of human experience can be expected to result from a breach of the easement agreement. They are therefore properly collectable as damages in this case. Based on the testimony Plaintiff adduced, the apportioned interest on the loan over the two-year period was $61,200, and the real estate taxes were $55,764. The Court also awards these amounts to the Plaintiff, collectively $116,964.

The Court agrees with the Defendants that it is difficult to apportion the damages in this case between the respective defendants with mathematical precision. But such exercise is unnecessary, since all the partnership Defendants are owned, operated, and controlled by Defendant Christopher W. Walker. As the sole general partner in each of these business organizations, Walker is liable for the obligations of each of the entities. The Court therefore finds the collective defendants to be jointly and severally liable for the damages awarded in this case.

In addition to monetary damages, the Plaintiff seeks injunctive relief and attorneys' fees. The Court will hear further argument on the latter issue on June 9, 2000. As articulated by the Court at the close of the trial on April 13, 2000, the Plaintiff is entitled to injunctive relief under the 1982 Easement Agreement. The Plaintiff shall have access to Sunrise Valley Drive from Parkridge VI via the ring road. However, fundamental principles of equity dictate that Plaintiff assumes a portion of the cost of maintaining the ring road. See *Hart v. Hart*, 27 Va. App. 46, 59-60, 497 S.E.2d 496 (1998).

Therefore, as a condition of the entitlement to use the ring road for commercial traffic, the Plaintiff shall reimburse the Defendants annually for one-sixth of the actual documented cost of maintaining the ring road. It would simply be unjust to allow the Plaintiff to use the road for commercial traffic without repaying the Defendants their pro rata share of the cost of maintenance. With respect to Walker's request for reimbursement for a

portion of the original cost of constructing the ring road, Walker did not seek payment in his Answer or Grounds of Defense. Consequently, the Court may not consider such relief at this time.

In the final analysis, the court will award Plaintiff the following damages and associated relief:

1. Compensatory Damages: $1,032,782.00, with statutory interest from date of judgment.

2. Injunctive Relief: The Plaintiff shall have a right to use the ring road for ingress and egress to and from Parkridge VI, as more particularly described above, conditioned upon Plaintiff's annual reimbursement of Defendant Walker for the cost of maintenance.

3. Attorneys' fees: Deferred until June 9, 2000, hearing.