PRESENT: All the Justices

MONTALLA, LLC

                                           OPINION BY

v. Record No. 230365                JUSTICE WESLEY G. RUSSELL, JR.
                                           MAY 9, 2024

COMMONWEALTH OF VIRGINIA, ET AL.


FROM THE COURT OF APPEALS OF VIRGINIA

Montalla, LLC ("Montalla") filed a five-count complaint in the Circuit Court of the City of Richmond against the Commonwealth of Virginia, Department of Transportation ("VDOT"), and the Comptroller of Virginia (collectively the "Commonwealth") related to several contracts VDOT had entered into related to construction inspections services.[1] The circuit court concluded that sovereign immunity barred all five counts and, as a result, dismissed the entire complaint with prejudice. The Court of Appeals affirmed the judgment of the circuit court, concluding that Counts I-III of the complaint were barred by sovereign immunity and that Counts IV-V were barred by the entry of a settlement agreement entered into by the pertinent parties.[2] For the reasons that follow, we reverse the judgment of the Court of Appeals and remand for further proceedings consistent with this opinion.

---

[1] The pertinent contracts were entered into between VDOT and NXL Construction Co., Inc. ("NXL"). In turn, NXL, which changed its name to Cortona, Inc., assigned its rights under the contracts to Montalla. For the sake of clarity, we refer to the agreements as contracts between VDOT and NXL and/or Montalla.

[2] In the circuit court, the Commonwealth asserted a plea of accord and satisfaction, arguing that the settlement agreement barred recovery. At the conclusion of the hearing on the plea of sovereign immunity, the circuit court and the parties agreed that a further hearing would be scheduled to hear other issues, including the Commonwealth's plea of accord and satisfaction. Such a hearing never occurred because the circuit court dismissed the entire complaint based on its ruling on the plea of sovereign immunity, and therefore, never addressed the effect of the settlement agreement or the plea of accord and satisfaction.

## I. BACKGROUND[3]

In 2014, NXL entered into three contracts with VDOT for construction inspection services (the "services contracts"). The services contracts permitted NXL to bill VDOT for certain overhead costs, including the cost of rental vehicles. Previously approved reimbursement rates for rental vehicles under these services contracts ranged from 128.28% to 137.94% of qualifying costs.

Because of the nature of the projects at issue, VDOT, in turn, could seek reimbursement from the federal government for the expenses that it reimbursed NXL so long as VDOT complied with Federal Acquisition Regulation ("FAR") provisions. The FAR provisions purportedly did not allow VDOT to receive reimbursement for expenses that NXL paid to an entity under its "common control."

Eventually, VDOT contended that the requested reimbursements violated FAR provisions. NXL disputed that its requested reimbursements ran afoul of these provisions. Furthermore, Montalla asserts in its complaint that, even if the payments could be found to run afoul of the FAR provisions, nothing in "FAR . . . dictate[d] what VDOT could pay as reimbursements to consultants; it only dictated what VDOT could be paid for costs submitted to the federal government for reimbursement," and therefore, "VDOT was obligated to pay

---

[3] At the dispositive hearing below, the circuit court did not hear evidence *ore tenus*. Much like the review of a demurrer, "where no evidence is taken in support of a plea in bar, the trial court, and the appellate court[s] upon review, consider solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's complaint are deemed true." *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022) (internal quotation marks and alterations omitted). In such a scenario, we not only accept as true the facts alleged, but also grant the plaintiff the benefit of all "reasonable factual inferences that can be drawn" from such a view of the facts. *Vlaming v. West Point Sch. Bd.*, 302 Va. ___, 895 S.E.2d 705, 716 (2023) (internal quotation marks omitted). As a result, in reciting and applying the facts pertinent to this appeal, we accept the facts alleged by Montalla as true and grant it every reasonable inference that flows from those facts.

previously established . . . rates under its existing contracts with [NXL], regardless of what VDOT ultimately received by way of reimbursements from the federal government."

The Assurance and Compliance Office ("ACO"), a division of VDOT responsible for overseeing the FAR audit process, continued to maintain that NXL could not seek reimbursement for rental vehicle costs given the ACO's understanding of the FAR provisions. Specifically, the ACO asserted that NXL was barred from seeking reimbursement from VDOT under the FAR provisions for vehicles rented by NXL from a company owned by a relative of NXL's chief executive officer. The ACO claimed that the entity leasing these vehicles to NXL was under the "common control" of NXL. Montalla alleges that the ACO selectively misinterpreted the FAR provisions to unfairly benefit VDOT and harm NXL.

NXL and VDOT debated the ACO's interpretation throughout 2015 and 2016. In 2016, the ACO notified NXL that it had not complied with the FAR provisions and was not entitled to any reimbursement from VDOT. In 2017, VDOT permitted NXL reimbursement at a rate of 75% of its eligible costs, subject to the completion of another audit. As a result of NXL's inability to claim reimbursements at the previously established rates, NXL lost money for every hour billed and suffered severe financial distress that forced it to agree to mediation with VDOT in 2017.

Just before mediation began, VDOT approved NXL's previous audits and agreed to reimburse NXL, but only at rates that were far lower than the original rates.

At the mediation in October 2017, VDOT threatened NXL with the termination of its services contracts and a lawsuit under the Virginia Fraud Against Taxpayers Act, premised on what Montalla contends was VDOT's knowingly erroneous interpretation of the FAR provisions. Montalla contends that NXL faced such dire financial strain—having lost $5,753,762.77 on

3

VDOT contracts alone[4]—that it had no choice but to agree to VDOT's terms and settle the dispute. Accordingly, NXL and VDOT came to a settlement agreement at the mediation whereby NXL would be entitled to reimbursement at rates of 99.13% and 91.03% of qualifying costs. By statute, this agreement did not become effective until February 20, 2018, when it was approved by the Governor.[5]

Under the settlement agreement, NXL promised to repay VDOT $4 million, with $1 million due up front followed by four yearly payments of $750,000, and release VDOT

> from any and all past, present and future actions, claims, debts, demands, damages, actions, causes of action, costs, expenses, compensation, third party actions, and/or liability, whether known or unknown, whether at law or at equity, whether asserted or could have been asserted which NXL may have or might claim against VDOT arising out of or relating to the Disputes, including, but not limited to, the withholding of approximately Two Million Eight Hundred Thousand Dollars ($2,800,000.00) NXL claimed VDOT wrongfully withheld when VDOT withheld indirect overhead costs in 2016 and 2017.

The term "Disputes" was

> defined as all civil issues, matters, disputes and proceedings relating to the following: (i) the establishment, determination, application and utilization of and all matters relating to FAR rates for years 2012, 2013, 2014 and 2015 and all years prior thereto . . . and FAR accounting issues, . . . (iii) reviews, challenges, investigations, inquiries, proceedings, demands and changes, including, but not limited to, those conducted, made or required by, on behalf of or for VDOT for years 2012, 2013, 2014 and 2015 and all years prior thereto, and including, but not limited to, those relating to indirect cost overhead audits and direct cost audits . . . (v) payment/reimbursement of direct and indirect costs relating to the Contracts, including, but not limited to, Contracts that utilize FAR Rates for years 2012, 2013, 2014 and 2015 and all years prior thereto and, including, but not limited to, VDOT assertions of alleged overbillings by NXL, (vi) assertions of "common control" between NXL and NiCe, LLC and NXL and Lexxor, LLC; NXL real estate and vehicle leasing contracts, costs, charges and issues; TRAC

---

[4] VDOT also caused NXL to lose money on other projects because VDOT was NXL's primary regulator and, thus, set the FAR rate for NXL on contracts nationwide. Montalla also claims that NXL lost out on additional contracts because VDOT harmed NXL's reputation.

[5] The settlement of certain claims in matters involving the Commonwealth or its agencies requires the approval of the Governor. *See* Code § 2.2-514.

4

lease issues; and reimbursement of vehicle mileage relating to the Contracts that utilize FAR Rates for years 2012, 2013, 2014 and 2015 and all years prior thereto and (vii) assertions that NXL and/or any of the NXL Parties may have violated or be liable under the Virginia Fraud Against Taxpayers Act.

Although permitted to make the settlement payment in installments, NXL ultimately elected to pay the settlement early in a single lump sum totaling $3,850,000, which VDOT accepted as payment in full.

In December 2017, VDOT published an Instructional and Informational Memorandum ("IIM") that described how VDOT interpreted the FAR provisions. NXL learned of the new IIM before the settlement agreement was finalized in February 2018. This IIM specifically noted that companies were entitled to reimbursement regardless of who owns the vehicles being leased, which is the precise position NXL had been advocating for and one that Montalla contends would have absolved NXL of any wrongdoing.

NXL later learned that VDOT submitted a formal letter to the Federal Highway Administration ("FHWA") (the entity that administers the FAR provisions) in August 2017 seeking guidance on the issue of common control. In the letter, the chief engineer of VDOT noted that the majority position within the agency was the one for which NXL had been advocating. The ACO dissented in this letter, laying out why it believed such an arrangement was disallowed under the FAR provisions. According to Montalla, the IIM demonstrates that the FHWA endorsed the position taken by NXL and the chief engineer "and rejected the ACO's interpretation of FAR." Montalla alleges that, given the timing of events, it is clear that VDOT, at the time of the mediation, not only generally concurred with NXL's position, but knew that it was consistent with the federal government's view of the FAR provisions. Despite this knowledge, VDOT asserted the opposite position in mediation and pushed forward with its campaign against NXL.

5

In 2018, shortly after VDOT published the December 2017 IIM, NXL attempted to learn more about VDOT's decision-making process, meeting with the Commissioner of VDOT and sending a follow-up letter to the Commissioner in October 2018 expressing concerns about VDOT's treatment of NXL. When these initial efforts did not bear fruit, NXL sought documents by way of the Virginia Freedom of Information Act ("FOIA") and other means. Although VDOT thwarted some of these efforts, NXL eventually obtained documents showing that the ACO pressured the Secretary of Transportation into cancelling an IIM—which was approved by the FHWA—that was set to be issued in July 2016 and would have supported NXL's position because it would weaken the ACO's arguments against NXL. The ACO also was successful in having VDOT push back the release date of another IIM that was set to be issued in March 2017, despite knowing as early as July 2016 that the FHWA essentially agreed with NXL's position regarding the reimbursement issue. Montalla contends that the ACO's actions were purposefully directed at it and motivated by animus toward NXL. As the information was obtained, NXL attempted to revisit the settlement agreement based upon what it considered VDOT's duplicitous conduct, but those efforts were unsuccessful.

Eventually Montalla acquired NXL's rights under the relevant services contracts. Discussions about revisiting the settlement agreement or otherwise resolving the ongoing dispute were unsuccessful. Having exhausted those avenues, "[i]n compliance with the pecuniary claim process per Va. Code. Ann. 8.01-192," Montalla "presented its pecuniary claims in a letter to VDOT on August 12, 2020." Through inaction, VDOT rejected the claim, permitting Montalla to file suit.

Montalla filed suit on February 11, 2021, against the Commonwealth of Virginia, VDOT, and the Comptroller of Virginia. The complaint contains five counts. In Count I, Montalla seeks

6

a declaratory judgment that the settlement agreement is void due to economic duress. In Count II, Montalla seeks to vacate the settlement agreement pursuant to Code § 8.01-581.26. In Count III, Montalla asserts that VDOT breached its duty of good faith and fair dealing regarding all of the services contracts. In Count IV, Montalla alleges that VDOT materially breached the 2014 services contracts by unilaterally and arbitrarily reducing NXL's reimbursement rate below levels required by the services contracts. Finally, in Count V, Montalla claims that VDOT's actions constituted a regulatory taking without just compensation in violation of Article I, Section 11 of the Constitution of Virginia.

In response, the Commonwealth filed a demurrer and asserted pleas of accord and satisfaction, the statute of limitations, and sovereign immunity. The plea of sovereign immunity was asserted only as to the complaint's first three counts; the Commonwealth has never asserted that Counts IV or V were barred by the doctrine of sovereign immunity.[6]

The circuit court held a hearing on September 13, 2021. At the hearing, the parties argued both the Commonwealth's plea of sovereign immunity to Counts I, II, and III of the complaint as well as its demurrer to Montalla's claim of economic duress. At the conclusion of the parties' arguments on these issues, the circuit court stated from the bench that it was overruling the demurrer to Montalla's economic duress claim, sustaining the plea of sovereign immunity as to Counts I and II, and overruling the Commonwealth's plea of sovereign immunity as to Count III.

---

[6] Not only did the Commonwealth not argue that sovereign immunity barred Counts IV and V in the circuit court, but it did not make such an argument in either the Court of Appeals or in this Court. When given an opportunity to do so at oral argument in this Court, the Commonwealth declined to assert that Counts IV and V were barred by sovereign immunity.

With the circuit court having announced rulings on these issues, the circuit court and the parties agreed that a further hearing would be scheduled to hear the remaining issues such as the Commonwealth's plea of accord and satisfaction. Such a hearing never occurred.

The next day, the circuit court sent the parties a letter that stated "[h]aving reconsidered my ruling of September 13, 2021, I sustain the defendant's plea of Sovereign Immunity and because of that ruling the entire case must be dismissed." The circuit court memorialized this ruling in a written order, which provides that it "ORDERED that Defendants' Plea in Bar of Sovereign Immunity is SUSTAINED" and that it "further ORDERED that Plaintiff's Complaint is dismissed WITH PREJUDICE." The circuit court neither issued a ruling nor made findings, factual or otherwise, regarding the Commonwealth's plea of accord and satisfaction.

Montalla appealed to the Court of Appeals, asserting that the circuit court erred by sustaining the Commonwealth's plea of sovereign immunity and dismissing the case with prejudice. The Court of Appeals affirmed the circuit court's decision in an unpublished opinion. First, the Court of Appeals interpreted Count I as seeking equitable rescission of the settlement agreement and held that sovereign immunity precluded such an action because sovereign immunity bars claims in equity against the Commonwealth. Second, the Court of Appeals determined that sovereign immunity barred Count II because Code § 8.01-581.26 did not expressly and explicitly waive the Commonwealth's sovereign immunity. Third, the Court of Appeals determined that Count III was barred by accord and satisfaction, and insofar as Count III sought to rescind the settlement agreement, it was barred by sovereign immunity. Finally, the Court of Appeals found that, because of the settlement agreement, Counts IV and V were barred by accord and satisfaction. The Court of Appeals noted that although a settlement agreement may be set aside if it was the result of duress, the facts did not support a claim of duress.

8

Montalla noted an appeal to this Court, and we granted review.

## II.  ANALYSIS

### A.  Standard of Review

"[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented." *Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 312 (2022) (internal quotation marks omitted).  In so doing, we accept as true all facts alleged in a plaintiff's complaint. *Id.*  We not only accept as true the facts alleged, but also grant the plaintiff the benefit of all "reasonable factual inferences that can be drawn" from such a view of the facts. *Vlaming v. West Point Sch. Bd.*, 302 Va. ___, 895 S.E.2d 705, 716 (2023) (internal quotation marks omitted).  With the facts and inferences viewed in this manner, we conduct a de novo review of whether a plea in bar was meritorious. *Plofchan v. Plofchan*, 299 Va. 534, 547-48 (2021) (citing *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019)).

### B.  Sovereign immunity and the Commonwealth's contracts

As we have repeatedly stated, "[t]he doctrine of sovereign immunity is alive and well in Virginia." *Fines*, 301 Va. at 313 (internal quotation marks omitted).  The doctrine represents "a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities." *City of Chesapeake v. Cunningham*, 268 Va. 624, 633 (2004) (quoting *City of Virginia Beach v. Carmichael Dev. Co.*, 259 Va. 493, 499 (2000)).  From the first days of the Commonwealth, the doctrine generally has been accepted as "an established principle of sovereignty" that precludes the Commonwealth from being "sued in its own courts . . . without

9

its consent and permission." *Gray v. Virginia Secy. of Transp.*, 276 Va. 93, 101 (2008) (quoting *Board of Public Works v. Gannt,* 76 Va. 455, 461 (1882)).

As a result, "the Commonwealth and its agencies are immune from liability for the tortious acts of their agents, employees, and servants absent express statutory or constitutional provisions waiving immunity." *Maddox v. Commonwealth*, 267 Va. 657, 661 (2004). Additionally, absent its consent, the Commonwealth, subject to certain exceptions, enjoys immunity "from suits in equity to restrain the government from acting or to compel it to act[,]" *Hinchey v. Ogden*, 226 Va. 234, 239 (1983), and from declaratory judgment actions. *Afzall v. Commonwealth*, 273 Va. 226, 231 (2007).

Because the protections of sovereign immunity belong to the Commonwealth *qua* Commonwealth, "[o]nly the General Assembly, acting in its capacity of making social policy, can abrogate the Commonwealth's sovereign immunity." *Alliance to Save the Mattaponi v. Commonwealth Dep't of Env't Quality ex rel. State Water Control Bd.*, 270 Va. 423, 455 (2005). "A waiver of sovereign immunity will not be implied from general statutory language but must be explicitly and expressly stated in the statute." *Id.* Owing to the fact that the decision of whether to waive the protections of sovereign immunity belongs to the General Assembly, an individual employee of the Commonwealth cannot waive those protections, *Commonwealth v. Luzik*, 259 Va. 198, 206-07 (2000), nor may they be waived "by agreement or inaction of the parties." *Afzall*, 273 Va. at 230.

Conspicuously absent from the types of cases listed above for which the Commonwealth enjoys immunity from suit are contract cases. The omission is no mere oversight. Rather, Virginia has "never extended th[e] defense [of sovereign immunity] to actions based upon valid

10

contracts entered into by duly authorized agents of the government."[7] *Wiecking v. Allied Medical Supply Corp.*, 239 Va. 548, 551 (1990). Regarding contract claims against the Commonwealth, we long have recognized that "it has ever been the cherished policy of Virginia to allow to her citizens and others the largest liberty of suit against herself; and there never has been a moment since October 1778 (but two years and three months after she became an independent state), that all persons have not enjoyed this right by express statute."[8] *Higginbotham's Ex'x v. Commonwealth*, 66 Va. (25 Gratt.) 627, 637 (1874). The statute we referenced in *Higginbotham*, 9 William Waller Hening, Statutes at Large 540 (1778), has been amended and recodified multiple times and is the predecessor of the current Code § 8.01-192. Despite some changes in wording, we consistently have held that each of these statutes represents "the Commonwealth's *general* consent to be subjected to suit in its own courts in

---

[7] To avoid running afoul of our holdings that no individual alone has the power to waive the Commonwealth's immunity, the requirement that the person binding the Commonwealth or one of its agencies by contract be a duly authorized agent empowered to do so is critical. We repeatedly have noted that contracts entered into by government officials lacking such authorization are void, and thus, not contracts at all. *See*, *e.g.*, *County of York v. King's Villa, Inc.*, 226 Va. 447, 450 (1983); *Richard L. Deal & Assocs., Inc. v. Commonwealth*, 224 Va. 618, 622-23 (1983). Here, the General Assembly has authorized VDOT to enter into contracts for the construction and maintenance of highways, *see*, *e.g.*, Code §§ 33.2-209 and -301, and has authorized public bodies to agree to mediation for disputes arising from certain government contracts. Code § 2.2-4366. The Commonwealth never has suggested that the signatories of the contracts in this case were not duly authorized agents of the Commonwealth.

[8] Our conclusion that Virginia has "never extended" sovereign immunity to bar "actions based upon valid contracts entered into by duly authorized agents of the government[,]" *Wiecking*, 239 Va. at 551, coupled with our observation that a statute authorizing contract claims against the Commonwealth did not come into existence until "two years and three months *after* [Virginia] became an independent state[,]" *Higginbotham's Ex'x*, 66 Va. (25 Gratt.) at 637 (emphasis added), at least suggests that, even absent a statute, sovereign immunity does not bar contract claims against the Commonwealth. Given the continued existence of such a statute and our consistent interpretation of it, we need not definitively address that issue to resolve this appeal.

11

contract cases."[9] *Wiecking*, 239 Va. at 552 (emphasis added). Thus, consistent with our longstanding interpretation of Code § 8.01-192 and its predecessors, we held in *Wiecking* "that the doctrine of sovereign immunity has no application in actions based upon valid contracts entered into by duly authorized agents of the government." *Id.* at 553.

This is not to say that a party seeking to raise a contractual claim against the Commonwealth or one of its agencies simply may file suit in a circuit court as it would against any other litigant. To the contrary, Code § 8.01-192 establishes a procedure by which a party must first make a claim against the Commonwealth or its agency and have the claim denied prior to bringing suit. *See also* Code §§ 2.2-814 and -815. However, if an aggrieved party undertakes "proper and timely proceedings" to make its contractual claim, it then may bring suit with the Commonwealth being "as liable for its contractual debts as any citizen would be[.]" *Wiecking*, 239 Va. at 553.

C. Sovereign immunity does not bar Montalla's claims "based upon valid contracts."

Montalla has alleged that the services contracts between NXL and the Commonwealth were "valid contracts entered into by duly authorized agents of the government." *See id.* Furthermore, Montalla also alleged that it "complied with all prerequisites and/or conditions precedent to pursuing its claims in" the circuit court. Given that we are bound at this stage in the proceedings by those allegations, the sole remaining question regarding the Commonwealth's claim of sovereign immunity is whether Montalla's claims are "based upon valid contracts[.]"

---

[9] The Commonwealth argues that changes to Code § 8.01-192 adopted in 1977 narrowed the scope of a citizen's right to sue the Commonwealth over its breach of a contract, and therefore, reliance on our holdings from pre-1977 cases is misplaced. We note however that the 1977 version of the statute was before us in *Wiecking*, where we both relied on our prior cases and reaffirmed that the statute meant "that the doctrine of sovereign immunity has no application in actions based upon valid contracts entered into by duly authorized agents of the government." 239 Va. at 553.

12

To the extent that the claims are based upon a contract, the circuit court erred in sustaining the plea of sovereign immunity and the Court of Appeals erred to the extent that it affirmed that judgment.

Determining whether an action or claim is "based upon a contract" requires a court to focus on the basis of the duty or obligation that a plaintiff claims to have been breached. *See MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 457 (2017) ("In determining whether a cause of action sounds in . . . contract, . . . 'the source of the duty violated must be ascertained.'") (quoting *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 256 Va. 553, 558 (1998)). As we have observed on multiple occasions,

> [i]f the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract[.]

*Crosby v. ALG Trustee, LLC*, 296 Va. 561, 568 (2018) (quoting *Oleyar v. Kerr*, 217 Va. 88, 90 (1976)). Thus, it is the nature of the dispute and not the remedy sought that determines whether an action is based upon a contract.

### 1. Count I

In Count I, Montalla asserts that the settlement agreement, a contract which was entered into to resolve contract-based claims arising from the services contracts entered into by NXL and VDOT, was rendered null and void by the Commonwealth's misconduct. In affirming the circuit court's sovereign immunity ruling as to Count I, the Court of Appeals did not limit its focus to the source of the duty allegedly breached, but rather, focused on the nature of the remedy sought. Characterizing Count I as seeking "equitable recission[,]" the Court of Appeals concluded that Count I was "a request for equitable relief dressed in breach of contract clothing" instead of a

13

contract claim. *Montalla, LLC v. Commonwealth*, 2023 Va. App. LEXIS 254, at \*16-17 (Apr. 25, 2023). From this conclusion, the Court of Appeals held that Count I was barred by the doctrine of sovereign immunity. In doing so, the Court of Appeals erred.

Accepting the Court of Appeals' characterization of Count I as seeking equitable recission of a contract does not alter the nature of the underlying dispute as being one *based upon a contract*. Although it is true that equitable recission is an equitable remedy, it is a remedy that is available in actions that are based upon valid contracts. As we recently explained, "[t]he cause of action underlying [a] rescission claim is *a breach of contract action*" and, as applicable here, "the remedy of equitable rescission presupposes *a breach of contract* that has caused the plaintiff some form of harm." *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 469 (2020) (emphasis added). Thus, although the requested relief historically may have been awarded by a chancellor sitting in equity, it only is available in this case because it is relief sought in an action *based upon a contract*.

A contrary conclusion, that equitable contract remedies are never available against the Commonwealth, would, at least in some circumstances, allow the Commonwealth to avoid completely obligations it undertook in validly entered contracts. In advancing its position at oral argument in this Court, the Commonwealth asserted that it could not be liable for specific performance related to a contract for the sale of real property because specific performance is an equitable remedy. *See Denton v. Browntown Valley Assocs.*, 294 Va. 76, 82 (2017). If specific performance of a contract is not an available remedy and there are no "special circumstances" that would support an award of consequential damages, *see Blue Stone Land Co. v. Neff*, 259 Va. 273, 278 (2000), the only possible remedy when the Commonwealth refused to honor a contract for the sale of real property would be to force the Commonwealth to refund the purchase price

14

and return the parties to the status *quo ante* as if the contract never existed. Of course, that describes a court ordering equitable recission, which both the Court of Appeals and the Commonwealth insist is not available against the Commonwealth because of the doctrine of sovereign immunity. Such an absurd result cannot be squared with our longstanding view that the defense of sovereign immunity has "never extended . . . to actions based upon valid contracts entered into by duly authorized agents of the government." *Wiecking*, 239 Va. at 551.

Consistent with our precedent regarding sovereign immunity and contract claims, the fact that the relief Montalla sought in Count I was for a claim based upon a contract leads to the conclusion that "the doctrine of sovereign immunity has no application" here. *Id.* at 553. Accordingly, the Court of Appeals erred in affirming the circuit court's decision to sustain the plea of sovereign immunity as to Count I.[10]

### 2. Count II

In Count II, Montalla seeks to have the mediated settlement agreement, undoubtedly a contract, set aside pursuant to Code § 8.01-581.26. In pertinent part, that code section provides a remedy—specifically, that a "court shall vacate a mediated agreement reached in a mediation . . . where . . . [t]he agreement was procured by fraud or duress, or is unconscionable[.]" Code § 8.01-581.26. Focused on the remedy sought as opposed to the basis of the action itself, the Court of Appeals concluded that sovereign immunity barred Count II. Specifically, the Court of Appeals reasoned that because "[t]here is no language whatsoever within [Code § 8.01-581.26]

---

[10] Because sovereign immunity does not apply to claims based upon contracts, our conclusion does not, in any way, offend or alter the "general rule" that the Commonwealth enjoys immunity "from suits in equity to restrain the government from acting or to compel it to act[,]" *Hinchey*, 226 Va. at 239, or declaratory judgment actions. *Afzall*, 273 Va. at 231. In most cases, equitable claims and declaratory judgment actions that are not based upon contracts remain subject to the defense of sovereign immunity unless otherwise waived by the Commonwealth.

15

that expressly or explicitly states a waiver of sovereign immunity[,]" "the Commonwealth . . . enjoys the protection of sovereign immunity" regarding Count II. *Montalla*, 2023 Va. App. LEXIS 254, at *20-21.

Once again, the Court of Appeals' focus on the nature of the remedy sought, in this case a statutorily provided remedy, as opposed to the nature of the claim itself caused it to err. Although it is true that a general statute that does not contain an express waiver of sovereign immunity does not waive the Commonwealth's immunity if it otherwise applies, *Afzall*, 273 Va. at 230, and that the statute providing for the remedy Montalla seeks in Count II is a general statute that does not contain an express waiver of sovereign immunity, these facts do not change the nature of the claim from being one based upon a contract, and thus, outside the protections of sovereign immunity.

Here, no one disputes that the settlement agreement is a contract entered into by duly authorized agents of the Commonwealth for the specific purpose of resolving the disputes regarding the services contracts.[11]  In fact, the settlement agreement expressly provides that it was entered into to resolve "disputes" that arose "between NXL and VDOT regarding costs, audits, payment and reimbursement under the [services] *Contracts* and applicability and interpretation of certain FAR provisions" related to those contracts.  (Emphasis added.) Likewise, there is no dispute that the settlement agreement is "a mediated agreement reached in a mediation[.]"  Code § 8.01-581.26.  Accordingly, regardless of the remedy sought (in this case vacation of the settlement agreement), the dispute is based upon contracts and the various duties

---

[11] As will be discussed in Section II(D), *infra*, the Court of Appeals' conclusion that Counts III, IV, and V are barred by the doctrine of accord and satisfaction necessarily assumes that the settlement agreement is a "valid contract[] entered into by duly authorized agents of the government." *Wiecking*, 239 Va. at 551.

16

and obligations that the parties owe (or do not owe) under those contracts. Because Count II is a claim based upon contracts, the doctrine of sovereign immunity does not apply, *Wiecking*, 239 Va. at 553, and therefore, the Court of Appeals erred in affirming the circuit court's decision to sustain the plea of sovereign immunity as to Count II.

### 3. Count III

In Count III, Montalla alleges that the services contracts and the settlement agreement included an implied duty of good faith and fair dealing and that VDOT breached that duty regarding each of the contracts. The Court of Appeals concluded that, although such a duty exists for existing contracts and could have been breached regarding the services contracts under the facts alleged, any such claims were released by NXL when it entered into the settlement agreement. *Montalla, LLC v. Commonwealth*, 2023 Va. App. LEXIS 254, at *24-26. Given its earlier conclusion that sovereign immunity precluded any attempts by Montalla to set aside the settlement agreement, the Court of Appeals concluded that, in effect, sovereign immunity barred the duty of good faith and fair dealing claims regarding the services contracts.[12] *Id.* at *26. Accordingly, the Court of Appeals affirmed the circuit court's judgment that sovereign immunity barred Count III.

There is little question that a claim that a party breached a contract's implied duty of good faith and fair dealing is a claim based upon a contract, and thus, normally would not be subject to the bar of sovereign immunity.[13] *Wiecking*, 239 Va. at 553. Recognizing this, the

---

[12] The Court of Appeals also found that Count III was barred by accord and satisfaction. For the reasons set forth regarding Counts IV and V in Section II(D), *infra*, the Court of Appeals also erred to the extent that it concluded that, on this record, accord and satisfaction barred Count III.

[13] We have recognized that the duty of good faith and fair dealing applies to insurance contracts. *See, e.g.*, *Manu v. GEICO Cas. Co.,* 293 Va. 371, 386 (2017) ("A covenant of good

17

Court of Appeals affirmed the circuit court's sovereign immunity ruling by relying on its conclusion that sovereign immunity barred Montalla's attempts to set aside the settlement agreement in Counts I and II. For the reasons stated above, the conclusion that sovereign immunity bars Counts I and II is erroneous. Because sovereign immunity does not bar those counts, the Court of Appeals erred in concluding that Count III was barred by sovereign immunity, and thus, erred in affirming the circuit court on that issue.

D. Counts IV and V are not barred on this record.

In Count IV, Montalla alleges that VDOT breached the services contracts by refusing to pay the agreed upon reimbursement rates contained in the services contracts, thereby causing more than $16,000,000 in direct damages. In Count V, Montalla alleges that the Commonwealth's conduct constituted a regulatory taking in violation of Article I, § 11 of the Virginia Constitution. Recognizing that sovereign immunity does not bar direct damage claims for breach of contract, *see* Code § 8.01-192; *Wiecking*, 239 Va. at 553, or takings claims under Article 1, § 11, *see Kitchen v. City of Newport News*, 275 Va. 378, 392 (2008), the Commonwealth never has asserted that these claims were barred by sovereign immunity. These facts notwithstanding, the circuit court, without explanation, held that sovereign immunity barred Counts IV and V.

---

faith is implied in insurance contracts, and imposes a burden on both parties that neither will do anything in bad faith to injure the others' rights under the[ir] agreement."). We have likewise recognized that "a duty of good faith and fair dealing exists under the U.C.C. as part of every commercial contract," by operation of former Code § 8.1-203 (*see now*, Code § 8.1A-304). *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 251 Va. 28, 33 (1996). Similarly, the current Restatement provision on this topic states that "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Restatement (Second) of Contracts § 205 (1981). These authorities make it clear that a claim that the duty of good faith and fair dealing has been breached is invariably a contract-based claim.

18

Apparently recognizing that sovereign immunity could not bar these claims directly, the Court of Appeals effectively held that the claims in Counts IV and V were barred by accord and satisfaction.[14]  Underlying this holding was the Court of Appeals' conclusion that the settlement agreement was fully enforceable because sovereign immunity and the facts alleged precluded any finding that it was not.  At least at this stage of the proceedings, this was error.

An "[a]ccord and satisfaction is a method of discharging a contract . . . , whereby the parties agree to give and accept something in settlement of the claim or demand of the one against the other . . . , the 'accord' being the agreement and the 'satisfaction' its execution or performance." *Atkins v. Boatwright*, 204 Va. 450, 454 (1963) (quoting *Owen v. Wade,* 185 Va. 118, 124 (1946)).  Here, the Court of Appeals concluded that the settlement agreement was the accord, and therefore, the Commonwealth was entitled to the performance of the satisfaction, which included NXL's release of claims related to the services contracts.

Necessarily, this assumes the settlement agreement is enforceable and is not subject to being set aside.  At this stage of the proceedings, the Court of Appeals erred in definitively concluding that the settlement agreement and the release of claims it contains is enforceable, and thus, its conclusion that Counts IV and V are barred by accord and satisfaction is, at best, premature.

In concluding that the release contained in the settlement agreement was enforceable, the Court of Appeals recognized that Montalla had alleged duress as a reason to set the settlement agreement aside, but then concluded that duress was not available because "at no point did NXL

---

[14] As noted above, the Commonwealth asserted a plea of accord and satisfaction in the circuit court, alleging that the claims underlying Counts IV and V, although not barred by sovereign immunity, had been released when NXL entered into the settlement agreement.  The circuit court, however, never ruled on the plea of accord and satisfaction and, in fact, did not hold a hearing that it had instructed the parties to set on the matter.

repudiate or disavow the accord." *Montalla, LLC v. Commonwealth*, 2023 Va. App. LEXIS 254, *30. In making this *factual finding* in the first instance, the Court of Appeals strayed from its proper role as an appellate court.

As noted above, the circuit court conducted no evidentiary hearing on the Commonwealth's plea of accord and satisfaction, and thus, made no formal factual finding based on the evidence regarding whether or not there had been duress compelling NXL to enter into the settlement agreement or whether NXL/Montalla had taken steps to repudiate the settlement agreement. In fact, to the extent that the circuit court gave any indication of how it viewed the allegations of duress, it announced from the bench at the hearing on the Commonwealth's demurrer and plea of sovereign immunity that it concluded Montalla "ha[d] pled sufficient facts to . . . establish a case for . . . duress[.]" This conclusion, however, was never memorialized in a written order because the circuit court the next day revisited its sovereign immunity ruling and concluded that all counts were barred by sovereign immunity, effectively removing any need to address the issue of duress.

Given that no evidence was taken on the plea of accord and satisfaction and that the circuit court made no factual findings which could be reviewed, the Court of Appeals was required to accept all allegations in Montalla's complaint as true, *Fines*, 301 Va. at 312, and grant to it all reasonable inferences that could possibly flow from that view of the facts. *Vlaming*, 302 Va. at ___, 895 S.E.2d at 716.[15] When so viewed, Montalla, as the circuit court

---

[15] At oral argument in this Court, the Commonwealth argued that evidence was taken on the plea because the settlement agreement, which was referred to in but not attached to Montalla's complaint, was before the circuit court. Our review of the record reveals no hearing in which the document was admitted into evidence. The record does reflect that, in the circuit court, the Commonwealth moved to crave oyer of the settlement agreement and other documents. Although no order was entered on the motion craving oyer, the record reflects that "[t]he Parties . . . conferred and resolved the Motion Craving Oyer by agreeing that the [circuit

previously stated, has pled sufficient facts to raise duress as an issue,[16] and, as it pertains to the Court of Appeals' ruling, has alleged sufficient facts, when buttressed by all reasonable inferences, to have sufficiently alleged repudiation.

The Court of Appeals correctly notes that a duress claim requires the party claiming duress to demonstrate that it sought to repudiate the contract soon after learning of the facts that give rise to the duress claim. *Montalla, LLC v. Commonwealth*, 2023 Va. App. LEXIS 254, *30. It erred, however, in concluding on this record that Montalla has not alleged facts that, when buttressed by all reasonable inferences, were sufficient to allow a rational factfinder to conclude it had done so.

Montalla alleges that NXL began to become aware of the Commonwealth's alleged duplicity and otherwise improper conduct that helps form the basis of the duress claim with the publication of the December 2017 IIM. Armed with that information, NXL sought additional

---

c]ourt *may consider as part of the pleadings*" certain documents, including the settlement agreement. (Emphasis added.) *Cf. Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 382 (1997) (recognizing documents subject to a granted motion craving oyer can be considered as part of the pleadings and "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings"). Thus, the settlement agreement merely is part of the pleadings and nothing about its existence contradicts Montalla's claim that the settlement agreement came into being as a result of misconduct by the Commonwealth that renders it unenforceable.

[16] Although duress claims generally turn on the unique facts of each case, we have stated that, in general, a party seeking to avoid a contract on the grounds of duress or coercion must establish, by clear and convincing evidence, "wrongful acts that compel a person . . . to manifest apparent assent to a transaction without volition, or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction." *Jacobs v. Jacobs*, 218 Va. 264, 267 (1977); *see also* Kent Sinclair, 1 Virginia Remedies § 43-10 (2023). Although, as Professor Sinclair notes, "[a] contract reluctantly entered into by one badly in need of money without force or intimidation and with full knowledge of that fact is not a contract executed under duress[,]" Sinclair, 1 Virginia Remedies § 43-10 (citing *Cary v. Harris*, 120 Va. 252 (1917)), Montalla has sufficiently alleged facts that, when accepted as true and supported by all reasonable inferences, raise a question of duress.

information and began conversations with both VDOT and its lawyers regarding the situation. According to Montalla, VDOT attempted to thwart these inquiries and conversations, going so far as to refuse to comply fully with FOIA requests. As NXL and eventually Montalla collected through FOIA and other means the evidence Montalla contends gives rise to the duress claim, discussions continued about the conduct and the settlement agreement. From the facts alleged, it is a reasonable inference that NXL and Montalla engaged in this investigation and the conversations to seek to revisit and ultimately rescind the settlement agreement. When those conversations did not result in a change in VDOT's position, Montalla began the claims process outlined in Code § 8.01-192. Thus, accepting as true all of Montalla's allegations and properly granting it all reasonable inferences from those allegations, the Court of Appeals erred in concluding that Montalla had not at least raised an issue for a factfinder regarding duress and repudiation.

Furthermore, we note that the Court of Appeals' analysis that the settlement agreement, including the release of claims contained therein, was enforceable necessarily was informed by its conclusion that Counts I and II of the complaint were barred by sovereign immunity. After all, if Montalla were to be successful on either of those counts, the settlement agreement would be deemed unenforceable, and thus, could not bar the claims Montalla has asserted in Counts IV and V. Given that we have held it was error to conclude that sovereign immunity barred Montalla's efforts in Counts I and II to have a court set aside the settlement agreement, it is possible that, on remand, the settlement agreement will be set aside. If so, accord and satisfaction would not bar Counts IV and V, and thus, the Court of Appeals erred in so concluding at this stage of the proceedings.

22

### III. CONCLUSION

For the foregoing reasons, we hold that the Court of Appeals erred in concluding that the doctrine of sovereign immunity barred portions of Montalla's complaint and that the doctrine of accord and satisfaction barred the remainder. In so holding, we express no opinion on the ultimate merits of Montalla's contract claims, but rather, simply note that sovereign immunity does not preclude a circuit court from resolving those claims. Furthermore, in concluding that the Court of Appeals, at this stage of the proceedings, erred in finding that the settlement agreement barred portions of the complaint, we express no opinion as to whether accord and satisfaction might act as a bar once evidence is taken and Montalla is no longer entitled to the benefit of all reasonable inferences being drawn in its favor. That is a question to be answered on remand. Accordingly, we reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals with direction that this case be remanded to the circuit court for further proceedings consistent with this opinion.

*Reversed and remanded.*